IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENYA NICHOLSON, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-23-380 |
| C. CARTER, *Warden*, | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

Kenya Nicholson, a federal inmate proceeding without counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging his due process rights were violated on two occasions during the prison disciplinary process. ECF 1. The respondent, the warden of Federal Correctional Institution, Cumberland ("FCI-Cumberland"), filed a motion to dismiss the petition or, in the alternative, for summary judgment. ECF 7. Nicholson opposed the motion. ECF 9. Having reviewed the petition, motion, and related filings, the Court finds that no hearing is necessary. Rules 1(b), 8, *Rules Governing Section 2254 Cases in the United States District Courts*; D. Md. Loc. R. 105.6. For the reasons set forth below, the respondent's motion, treated as a motion for summary judgment, is granted.

**I.   Background**

On April 28, 2004, Nicholson was sentenced to a term of life in prison by the United States District Court for the Western District of Oklahoma, Case No. 5:03-cr-00145-R, for drug-related offenses. ECF 7-2, at 6. He was committed to the Bureau of Prisons ("BOP") on June 1, 2004. *Id*. On January 17, 2017, Nicholson received executive clemency from President Barack Obama, and his sentence was commuted to 324 months' incarceration. ECF 1-1, at 2; ECF 7-2, at 12.

On April 1, 2018, a BOP correctional officer was doing rounds in a housing unit and came upon Nicholson and another inmate huddled in a cube. ECF 1-4, at 4; ECF 7-3, at 7. The officer asked the inmates what they were doing and allegedly observed Nicholson place his hand behind his back while holding a cellphone. ECF 1-4, at 4–5; ECF 7-3, at 7. The officer directed Nicholson to hand over the cellphone, and Nicholson instead handed it to the other inmate behind his back. ECF 1-4, at 4–5; ECF 7-3, at 7. The officer demanded the phone again, and the other inmate gave him the phone. ECF 1-4, at 5; ECF 7-3, at 7. The officer patted down both inmates and found a phone charger in the other inmate's pocket. ECF 1-4, at 5; ECF 7-3, at 7. The officer completed an incident report that cited Nicholson for possession of a hazardous tool (the cellphone), a prohibited act under BOP policy. ECF 7-3, at 3–4, 7.

The matter was referred to the U.S. Attorney's Office for possible prosecution; more than a year later, the USAO released the matter in favor of administrative processing by the prison. ECF 7-1, at 2; ECF 7-3, at 9. The prison disciplinary process began, and the matter was forwarded to a Disciplinary Hearing Officer ("DHO") for a hearing and sanctions, if warranted. ECF 7-3, at 4, 7–8.

On August 5, 2019, the DHO held a hearing. ECF 7-3, at 5, 23–25. Nicholson submitted a signed affidavit from the other inmate present during the incident, in which the other inmate asserted the phone was his and that Nicholson did not know about it. *Id*. at 20–21, 24. Nicholson also denied any knowledge of the cellphone during the hearing. *Id*. at 23–24. Based on the totality of evidence, however, the DHO found that Nicholson had possessed the phone and imposed sanctions, including the loss of 41 days of Good Conduct Time ("GCT") credits and 60 days of non-vested GCT. ECF 1-1, at 2, ECF 7-3, at 23–25.

The DHO report noted that three times in the disciplinary process Nicholson denied possession or knowledge of the phone. ECF 7-3, at 24. The report also cited the signed affidavit from the other inmate in its findings. *Id*. The report then stated: "Although you deny the charge, you did not provide any exculpatory evidence to exonerate you from the charge." *Id*.

A couple years later, on August 31, 2021, Nicholson's cell was searched, and he was accused of possessing narcotics. ECF 1-1, at 2; ECF 7-1, at 3–5. The matter proceeded through the initial stages of the disciplinary process and was referred to the DHO for a hearing and imposition of sanctions, if warranted. ECF 7-4, at 4, 7. After a November 17, 2021 hearing, the DHO concluded Nicholson had possessed the narcotics and imposed sanctions, including the loss of 41 days of GCT credits. ECF 1-1, at 2; ECF 7-4, at 4, 22–25.

On February 9, 2023, Nicholson filed this § 2241 petition, alleging two violations of his due process rights during the disciplinary proceedings related to the April 1, 2018 cellphone incident and the August 31, 2021 narcotics incident. ECF 1. First, he complained that he had not received a copy of the DHO's report after the November 17, 2021 hearing, though he had attempted to use the administrative remedies process to obtain a copy. ECF 1-1, at 2; ECF 1-2, at 1–4; ECF 1-4, at 1–3. He ultimately received the report on March 20, 2023, after he filed this petition and more than a year after the hearing. ECF 7-1, at 5; ECF 9, at 5. Second, he asserted that the DHO was not impartial in reaching his conclusion regarding the cellphone incident, because, according to Nicholson, the DHO did not properly weigh an exculpatory statement from the other inmate. ECF 1-4, at 5–6. As relief, Nicholson asks that the Court order BOP to restore the GCT credits taken from him as a result of the two incidents and to expunge the incident reports from his record. ECF 1, at 8.

On April 13, 2023, the respondent moved to dismiss the petition or, in the alternative, for summary judgment, arguing that in both disciplinary matters, Nicholson received the due process to which he was entitled under *Wolff v. McDonnell*, 418 U.S. 539 (1974). ECF 7-1, at 5–10. The respondent further argued that both DHOs found Nicholson had committed the prohibited acts based on "some evidence," which is all that is required for substantive due process to be satisfied under *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445 (1985). *Id*. at 10–11.

Nicholson argues broadly that the respondent's motion misstates his arguments and concedes his petition's most salient points. ECF 9, at 2. Nicholson contends that any discussion in the DHO report of the other inmate's affidavit regarding the cellphone was "boilerplate" or just a "label or phrase," and that in truth, the DHO did not consider the affidavit. *Id*. at 2–3. Nicholson asserts the DHO "show[ed] a level of bias that made 'fair judgment impossible.'" *Id*. at 3. Nicholson insists that his appeal of the DHO's findings regarding the narcotics incident could not move forward without the DHO report on the incident, as appeals are tied to the inmate's receipt of the report rather than the date of the hearing. ECF1-4, at 2–3; ECF 9, at 4–5. He also contends that he was "prevented [ ] from making some sound arguments" in his petition, and he was "limited [in] the evidence he could offer on the arguments he did make." ECF 9, at 5.

**II.     Standard of Review**

Respondent moves to dismiss the complaint for failure to state a claim or alternatively for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral

to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Nicholson received sufficient notice that the motion may be treated as a summary judgment motion. The Court sent notice advising him that the respondent's motion could be construed as one for summary judgment and could result in the entry of judgment against him. ECF 8. Moreover, the respondent's motion, identifying summary judgment as possible relief, provided sufficient notice for Nicholson to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Thus, the Court is satisfied that Nicholson has been advised that the respondent's motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The

Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted).  However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).  A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor.  *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).  "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'"  *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

## III. Discussion

### A. The Delayed DHO Report

In relation to the narcotics disciplinary matter, Nicholson asserts that his due process rights were violated when the BOP did not provide him with the DHO report from the November 17, 2021 hearing before he filed his February 9, 2023 petition.  ECF 1-4, at 1–3; ECF 9, at 4–6.  Nicholson asserts that, because he did not receive the report, he was "deprived of the right to challenge and appeal the DHO findings of fact along with any evidence that it considered in finding

6

[him] guilty of such incident report." ECF 1-4, at 1. Nicholson states that he made several requests for the report to his "numerous Unit Teams." *Id*. at 2. When he was unsuccessful in obtaining a copy, he began the administrative remedy process without it. *Id*.

Under *Wolff*, an inmate who may lose GCT credits through the prison disciplinary system is guaranteed "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The Code of Federal Regulations specifies the information the report must contain, but it does not set a time limit for providing the report. 28 C.F.R. § 541.8(h). BOP policy states that the report is given to the inmate "ordinarily within 15 work days of the decision." *Program Statement 5270.09, Inmate Discipline Program*, U.S. Department of Justice, Federal Bureau of Prisons, at 34 (July 8, 2011; eff. Aug. 1, 2011), https://www.bop.gov/policy/progstat/5270_009.pdf.[1]  BOP policy does not address the consequences of or remedies for failure to deliver a report within that time.

Courts in the Fourth Circuit that have held that a delayed delivery of a disciplinary report to an inmate, without more, "does not provide a basis for federal habeas relief." *E.g.*, *Rogers v. Andrews*, No. 3:20-CV-375-DJN, 2021 WL 377194, at *1 (E.D. Va. Feb. 3, 2021); *Gainer v. Breckon*, No. 7:19-CV-00445, 2022 WL 1502583, at *2 (W.D. Va. May 12, 2022) (concluding "[d]elayed receipt of a DHO report, even in violation of BOP procedures, without more, is [ ] not a due process violation"); *Robinson v. Hutchinson*, No. 4:20-cv-00162-TLW, 2021 WL 508389, at *1 (D.S.C. Feb. 11, 2021) (concluding "an untimely delivery of a DHO's report does not equate to a violation of due process"); *Coleman v. Entzel*, No. 5:19-CV-35, 2019 WL 5399514, at *3

---

[1]  A court may "properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

(N.D.W. Va. Oct. 22, 2019) (concluding the petitioner had not stated a claim for a due process violation where the late delivery of a report "would [not] cause him to unduly serve lost good conduct time" if he prevailed on administrative appeal); *Shahan v. Ormond*, No. 3:18-CV-200-HEH, 2018 WL 6681210, at *8 (E.D. Va. Dec. 19, 2018) (concluding that a petitioner's due process claim based on late delivery of a DHO report failed because providing a report late—even months late—did not violate due process), *aff'd,* 778 F. App'x 217 (4th Cir. 2019).  These holdings rest, in part, on the principle that "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Consol. Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999); *see Rogers*, 2021 WL 377194, at *2; *Shahan*, 2018 WL 6681210, at *8.  Other circuits have concluded the same in unpublished decisions.  *See Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (finding no due process violation where the petitioner did not receive a disciplinary report for eighteen months because the petitioner did not demonstrate any prejudice as a result of the delay and had received the process he was due under *Wolff*); *Pinson v. Berkebile*, 528 F. App'x 822, 827 (10th Cir. 2013) (finding no prejudice from a three-to-four-year delay in receiving a report, given the amount of time remaining before the petitioner's projected release and his ability to appeal); *Staples v. Chester*, 370 F. App'x 925, 929–30 (10th Cir. 2010) (concluding that an eight-month delay in the delivery of a disciplinary hearing report to the petitioner did not prejudice his ability to bring an administrative appeal or render such an appeal futile); *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (finding no basis for habeas relief from late delivery of disciplinary hearing report provided the "delay had no prejudicial effect on [an] administrative appeal").

To establish a due process claim based on a belatedly produced disciplinary report, a petitioner must establish prejudice resulting from the delay.  *See Consol. Coal Co.*, 171 F.3d at

183. To satisfy the prejudice requirement, a petitioner must plead a specific harm caused by the delay, such as the possibility of overserving a sentence if an administrative appeal were to be successful. *See Coleman v. Entzel*, No. 5:19-CV-35, 2019 WL 5399514, at *3 (N.D.W. Va. Oct. 22, 2019) (finding the hypothetical overservice of a sentence not prejudicial where the possibility was not real); *Gainer v. Breckon*, No. 7:19CV00445, 2022 WL 1502583, at *3 (W.D. Va. May 12, 2022) (briefly discussing the example of the hypothetical overservice of a sentence in *Coleman*, *supra*).

Nicholson claims he was prejudiced by the delayed production of the report because he was unable to bring his administrative appeal sooner. True, the clock for filing an appeal did not start until he had received the DHO report on March 20, 2023. From that date, he had 20 days to file an appeal. 28 C.F.R. § 542.15. But the belated report did not prevent him from filing an appeal or cause him to overstay his sentence. Nicholson identifies no concrete harm traceable to the belated production of the report.

Nicholson advances his second prejudice argument in his response to the respondent's motion. ECF 9, at 5. While briefs cannot supplement the allegations of a petition, *Zachair, Ltd. V. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd,* 141 F.3d 1162 (4th Cir. 1998), the Court recognizes that Nicholson received the DHO report after he filed his petition. So, for the sake of efficiency and out of fairness to a *pro se* incarcerated litigant, the Court will consider the prejudice argument as if it had been pled. But Nicholson still does not identify any concrete harm resulting from the delayed production. He merely asserts that, without the benefit of the report, he was "prevented [ ] from making some sound arguments" in this habeas petition, and he was "limited [in] the evidence he could offer on the arguments he did make." ECF 9, at 5. But he did have the benefit of the report when he was drafting his response to the motion to dismiss, and he

9

still did not identify the arguments he would have made or what evidence he might have offered in support of his habeas petition. He has not alleged receiving the report late actually harmed him.

For these reasons, the Court grants the motion for summary judgment on this claim.

**B. The Exculpatory Evidence and DHO Impartiality**

Nicholson contends that the DHO assigned to the cellphone matter "conducted an arbitrary disciplinary hearing, as it related to weighing Nicholson's evidence of innocence." ECF 1-4, at 5. In support of its findings, the DHO report quoted the three times that Nicholson denied knowledge or possession of the cellphone during the disciplinary process (with the investigating lieutenant, to the Unit Disciplinary Committee, and at the DHO hearing). ECF 7-3, at 24. The report referred to the other inmate's affidavit claiming ownership of the phone and insisting Nicholson had no knowledge of it. *Id.* The report stated that the DHO found credible the written statement of the officer who found Nicholson in possession of the cellphone. *Id.* And, the report stated that, "[a]lthough [Nicholson] den[ied] the charge, [he] did not provide any exculpatory evidence to exonerate [himself] from the charge." *Id.* Nicholson appears to take issue with the last statement—that he did not provide exculpatory evidence that exonerates him. This, he seems to argue, shows the DHO did not consider the other inmate's affidavit in reaching a decision, which in turn means the report was not based on sufficient evidence and the DHO was not impartial. ECF 1-4, at 4; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A court liberally construes a pro se party's filing and holds it to a less stringent standard than an attorney's filing.").

The Supreme Court has stated that "due process requires some evidentiary basis for a decision to revoke good time credits." *Hill*, 472 U.S. at 455. The Court held:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . . Ascertaining whether this standard is satisfied does

10

> not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455–56 (internal quotations and citations omitted).  This "'some evidence' standard applies in determining the distinct question of whether sufficient evidence supported a decision to revoke good time credits."  *Lennear v. Wilson*, 937 F.3d 257, 276 (4th Cir. 2019).  But the "'some evidence' standard addresses the *evidentiary requirements* of due process [and] in no way abrogates the due process requirements enunciated in *Wolff*."  *Id.* (internal quotations and citation removed).  Those include a requirement that an inmate who may lose GCT credits through the prison disciplinary system also is guaranteed "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Hill*, 472 U.S. at 454.  Further, the decisionmaker that conducts the required disciplinary hearing and determines whether to revoke credits must be "sufficiently impartial to satisfy the Due Process Clause" and not present "such a hazard of arbitrary decisionmaking" that the decisionmaker could be "held violative of due process law."  *Wolff*, 418 U.S. at 571; *see Surprenant v. Rivas*, 424 F.3d 5, 16 (1st Cir. 2005) ("The *Wolff* Court also implied the obvious: that the essence of a fair hearing is an impartial decisionmaker."); *Fitchette v. Collins*, 402 F. Supp. 147, 155 (D. Md. 1975) ("As a general due process matter, of course, the inmate would be entitled to a fair hearing by an impartial tribunal."); 28 C.F.R. § 541.8(b) (stating in part that "[t]he DHO will be an impartial decision maker . . . .").

It is clear from the record that Nicholson was given the opportunity to present the testimony of his witness through that witness's affidavit and that the affidavit was described in the evidence section of the DHO report.  ECF 1-4, at 5 ("Further, during the disciplinary hearing in front of the DHO, [the other inmate's] signed affidavit was submitted."); ECF 7-3, at 23, 24 (logging the

11

affidavit under "Documentary Evidence" in the DHO report and incorporating a brief summary of the affidavit under "Specific Evidence Relied on to Support Findings"). Thus, Nicholson was afforded the opportunity to present evidence in his defense. *Hill*, 472 U.S. at 454.

Nicholson's position that the DHO was biased or partial fares no better. "In order to prevail in a [bias-based] deprivation of due process claim, a defendant must show a level of bias that made fair judgment impossible." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (internal quotations and citation omitted). "Adjudicators are entitled to a presumption of honesty and integrity [ ], and thus the constitutional standard for impermissible bias is high [ ]." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986)). "[T]here must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated . . . ." *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986); *see Caton Ridge Nursing Home, Inc. v. Califano*, 447 F. Supp. 1222, 1227 (D. Md. 1978), *aff'd*, 596 F.2d 608 (4th Cir. 1979).

Nicholson has failed to identify any bias, let alone an impermissible bias, that meets the high constitutional standard. Generously read, the petition suggests that the DHO improperly credited the statements of a correctional officer over the affidavit of an inmate and Nicholson's statements. Assuming that is the allegation, Nicholson does not identify impermissible bias. Rather, the record shows the DHO weighed the evidence and credited the officer's statements over the inmate's and Nicholson's. Nicholson has not provided a substantial countervailing reason to conclude that the DHO was actually biased when the DHO assessed the credibility of the inmate's affidavit and his statements, even if he gave no weight to those statements.

The statement in the report that Nicholson did not provide "any exculpatory evidence to exonerate [him] from the charge," ECF 7-3, at 24, meant that the DHO did not credit the other

inmate's affidavit over the written statement from the officer who found Nicholson with the cellphone.  The affidavit indisputably was included as a consideration in the DHO report, as were Nicholson's denials and the officer's written statement.  The DHO's conclusion that the officer was credible and the inmate and Nicholson were not is not evidence of bias.

Finally, turning to the "some evidence" standard, the record provides ample evidence to support the DHO's conclusion that Nicholson possessed the cellphone.  The "some evidence" standard is "an exceedingly lenient standard, requiring only a modicum of evidence."  *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quotations and citation omitted).  In determining whether that standard was satisfied, a court is not required to examine the entire record, make an independent assessment of witnesses, or re-weigh the evidence.  *Hill*, 472 U.S. at 455.  If the decision of the DHO has "some basis in fact," it is "sufficient to meet the requirements imposed by the Due Process Clause."  *Id*. at 456.

Here, there is certainly some basis in fact for the DHO's decision.  The eyewitness testimony from the correctional officer was that Nicholson possessed a phone during the encounter.  The officer stated a phone was passed from Nicholson to the other inmate and recovered from the other inmate.  The other inmate acknowledged he possessed and owned the cellphone.  The DHO discredited the inmate's statement that Nicholson did not know about the phone.  Based on this record, the DHO's determination was grounded in "some evidence" and met the due process requirements.

Accordingly, the motion for summary judgment is granted as to this claim.

## IV. Conclusion

For the reasons set forth above, the Court grants the respondent's motion for summary judgment, ECF 7. A separate order follows.


February 29, 2024
Date

Deborah L. Boardman
United States District Judge